**In re Lynn A. HENSON.**

**Reeda Henson JOHNSTON, Plaintiff,**

v.

**Lynn A. HENSON, Defendant.**

Bankruptcy No. 95–42997 S.
Adv. No. 95–4164.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

June 11, 1996.

Joel Taylor, Little Rock, AR, for plaintiff.

Donald K. Campbell, Little Rock, AR, for defendant/debtor.

Richard Ramsay, Trustee, Little Rock, AR.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial of the complaint to determine dischargeability of debt pursuant to section 523(a)(15). In addition, there is pending a motion by the defendant to amend his answer, filed on April 2, 1996. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I).

This case exemplifies many of the legal and factual difficulties problems associated with Congress' unfortunate assignment of divorce litigation to the U.S. Bankruptcy Court. The plaintiff, Reeda Henson ("Reeda") will not suffer unduly if the debts are discharged, but the debtor neither needs nor deserves relief.

The parties to this case married in 1985 and divorced in 1995. During the latter part of the marriage the parties earned a combined yearly income of over $80,000 and spent Reeda's $287,000 inheritance on, among other things, drugs and alcohol. In the divorce, the Chancellor awarded all of the remaining $70,000 inheritance to Reeda, much of which she used to pay her share of the marital debts. Later, when the debtor failed to pay his marital debts, she was required to obtain loans to pay the dunning creditors. In addition to having to obtain loans to pay debtor's apportioned debts, she has had to delay starting a family to pay the loans. Reeda earns over $50,000 per year and drives a Mercedes automobile.

In the divorce, the debtor was awarded one-half of the property acquired by the parties during their marriage.[1] Despite obtaining $6,500 of Reeda's inheritance in settlement of his appeal of the Chancellor's award, he did not pay his portion of the marital debts and created an additional debt for them both: although he was required to pay the mortgage and dispose of the Texas marital residence, he did nothing. The property was foreclosed and a deficiency judgment rendered against both parties.

The debtor is a well-educated professional in the insurance field who previously held well-paying jobs. He has not worked since he was terminated from his employment in December 1994. Unable to find a position in the insurance field, and, unwilling to explore other options, the debtor does not work, but is supported by his parents. Virtually all of his scheduled $100,000 debt is related to the divorce, much of which constituted Reeda's obligations under the decree, or debtor's obligations under the decree, some of which had been paid by Reeda. A review of the debt-

---

1. Debtor's claim that he did not "get" this property exemplifies his evasiveness and untruthfulness throughout the trial. He, in fact, was awarded the property, and it was in his possession. He apparently chose not to move that property when he relocated to Arkansas. His inaction with regard to the property does make it less "his." The Chancellor in the divorce proceedings also found the debtor not to be a credible witness.

or's schedules reveals that many of the listed debts are duplicated: [2]

$26,500 of the listed debt is owed to his father related to costs incurred in the divorce;

$27,000 of the listed debt constitutes the marital debt he was required to pay under the divorce decree, listed as debts to each creditor;

$27,000 of the listed debt is the marital debt he was required to pay under the divorce decree, listed as a debt to Reeda;

Approximately $1,000 of the debt is debt accruing during the marriage, but with regard to which the Court has few facts;

Only $5,250 of the debt is post-divorce debt. $5,000 is attributable to moving costs, presumably the move from Arkansas back to Texas.[3]

Essentially, debtor's only debts are to his parents and the marital debts he was obligated to pay under the divorce decree. He had, and may still have, substantial assets, including a Rolex watch which, conveniently, disappeared prior to the bankruptcy.[4] There was also evidence that the debtor undervalued his assets and omitted some of them from his schedules. These facts, together with the debtor's surly, evasive, and untruthful demeanor indicate to the Court that this bankruptcy is merely an extension of the divorce proceedings. Debtor failed to comply with the Chancellor's directives regarding certain marital property and does not wish to comply with the requirements that he pay some of the debts. He did not like the outcome of the divorce proceedings and wishes to continue that contest. Unfortunately, Congress has unwittingly provided him with an opportunity to do so in the federal courts.

■ In 1994, Congress amended the Bankruptcy Code to add a new nondischargeability provision:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). Under this provision, the marital debt is presumptively nondischargeable unless the debtor can demonstrate that he does not have the ability to pay the debt *or* the benefit to him is greater than the detriment to his former spouse. *See generally In re Straub*, 192 B.R. 522 (Bankr. D.N.D.1996) (discussing placement of the burdens of proof upon the debtor and nature of elements to be proven); *In re Gantz*, 192 B.R. 932 (Bankr.ND.Ill.1996) (burdens of proof).

■ The debtor argues that, in the absence of any "hold harmless" language in the divorce decree, the debt is not one to Reeda, but rather, to third parties such that the statute does not apply. Thus, the first issue for the Court is whether there is a debt owed within the meaning of this statute *i.e.*, whether the debt was incurred in the course of a

---

2. The Court does not fault the debtor for listing Reeda separately as a creditor. Indeed, he is required to do so. However, the manner in which the debts are listed implies that the debtor has greater debts than he in fact has.

3. Since the debtor has been unemployed for a lengthy period of time, this total amount of post-divorce debt is astonishing, if not incredible.

Although he testified that his parents are supporting him, he did not schedule debt owed to his parents since the divorce.

4. The watch had been pawned. When asked questions regarding the watch at his section 341(a) meeting, he asserted his fifth amendment privilege against self-incrimination.

divorce or other order of a court of record. The debtor argues that since there is no absolute direction to pay money directly to Reeda, there is no debt to Reeda. This is a misreading of the language of the statute and its intent. Section 523(a)(15) does not require that a court order the debt be paid directly to the spouse. The statute provides that a debtor is not discharged from *any* debt incurred by the debtor in the course of a divorce or in connection with a divorce decree. The statute does not impose a "direct pay" requirement.

■ Second, although there is no "hold harmless" language in the decree or complaint, under Arkansas law, the debtor incurred a debt to Reeda in connection with the divorce proceeding. Under Arkansas law, a Divorce Decree containing the language "ordered" creates an obligation on the parties to comply with that Order, enforceable by the civil and criminal contempt and garnishment powers of that court. *Thomas v. Thomas*, 246 Ark. 1126, 443 S.W.2d 534 (Ark.1969); *see Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (Ark.1991) (wife, ordered to "make individual payments . . . for their portion," but failed to pay, incarcerated for contempt). In the instant case, the Chancery Court order imposed upon the debtor a duty to pay his apportioned debts, which Order was enforceable by any means within the Chancery power. *See* Ark.Code Annot. § 9–12–313 (Michie 1979). Indeed, the Order itself retained jurisdiction for it to be enforced.[5] Based upon that order, the debtor incurred a debt in connection with the divorce within the meaning of section 523(a)(15).

■ Third, under Arkansas law, at the time the decree was entered, the debtor had an obligation to indemnify his former spouse. *See generally Merrill Lynch v. First National Bank of Little Rock*, 774 F.2d 909 (8th Cir.1985) (discussion of different types of indemnification under Arkansas law). In this case, the debtor had a duty imposed by court order to pay the particular marital debts such that the debt was required to be paid by him rather than by Reeda. It is clear from the context and the documents that the parties were ordered to bear their apportioned debts and hold the other harmless from payment. *See King v. Speaks (In re Speaks)*, 193 B.R. 436, 441 (Bankr.E.D.Va.1995) ("Indeed, in the absence of an explicit agreement, the law will imply an obligation to indemnify where one party incurs a debt for his own benefit which creates liability on the part of another."). Accordingly, the debtor incurred a debt in connection with the divorce within the meaning of section 523(a)(15).[6]

■ Upon the non-debtor's proof that the debt was incurred in the course of the divorce or later order, the burden shifts to the debtor to demonstrate either that the debtor does not have the ability to pay the debt or that discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse. *See In re Morris*, 193 B.R. 949 (Bankr.S.D.Cal.1996). With regard to these elements, the Court views the parties' circumstances as of the time of trial, rather than any earlier date, in order to fully examine the benefits of the "fresh start" to the debtor, any change in circumstances in employment, and other good or bad fortune which may have befallen the parties. In considering changed events, and particularly the benefits of discharge, the current and future financial circumstances of the parties are better analyzed. *See In re Dressler*, 194 B.R. 290 (Bankr.D.R.I.1996); *In re Taylor*, 191 B.R. 760 (Bankr.N.D.Ill.1996).

■ The Court finds that the debtor has the ability to pay the debt and thus does not meet his burden under paragraphs 523(a)(15)(A). This Court believes that the appropriate analysis includes a view of the debtor's future financial situation, including

---

5. Enforcement, *i.e.*, contempt, proceedings were scheduled for October 11, 1995. The debtor halted those proceedings by filing his bankruptcy petition at 4:44 p.m. on October 10, 1995.

6. In so ruling the Court follows the analysis found in *Speaks*, 193 B.R. 436, and declines to

follow *In re Stegall*, 188 B.R. 597 (Bankr. W.D.Mo.1995), which held, without reference to state law, that the absence of any "hold harmless" language meant that no debt was created as between the parties, and *In re Owens*, 191 B.R. 669 (Bankr.E.D.Ky.1996), which follows *Stegall*.

an ability to make minimal monthly payments on the debt, rather than a static view of the debtor's current ability to pay the debt. *Cf. In re Straub,* 192 B.R. 522 (Bankr. D.N.D.1996); *In re Florio,* 187 B.R. 654 (Bankr.W.D.Mo.1995). Of course, under this prong of the statute, the analysis is based solely upon the finances of the debtor; the finances of the non-debtor are not relevant until the second prong of the statute is analyzed. *See In re Gantz,* 192 B.R. 932 (Bankr. N.D.Ill.1996).

The debtor in this case is a well educated, employable, healthy male who can work, but does not. Although he purportedly lacks the income to pay the obligation at this moment in time, he has not produced any evidence that he lacks the ability to pay the debt. Despite his education, skills, and previous employment, he has chosen to limit his income and employment. *Cf. In re Huddelston,* 194 B.R. 681 (Bankr.N.D.Ga.1996) (no proof of inability to pay "in light of voluntary nature of underemployment and failure to pursue more lucrative opportunities"); *In re Florio,* 187 B.R. 654 (Bankr.W.D.Mo.1995) (imputing income based upon debtor's voluntary unemployment). Since he has the ability to pay, the debtor has failed in his proof under paragraph 523(a)(15)(A).

▮▮▮▮ Under the second paragraph of the statute, the debtor must demonstrate that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." The terms of this statute require a Court weigh the benefit against the detriment—an odd balancing and an impossibly amorphous standard. Numerous factors regarding the finances, needs, and general merits of each party's position, trying to determine who will suffer more are generally considered in this analysis. *See, e.g., In re Smither,* 194 B.R. 102 (Bankr. W.D.Ky.1996).

The Court finds that, on balance, the debt should be nondischargeable. Were the debt discharged, the benefit to the debtor is that he no longer will have to make payments on the debt and may, if he continues to fail to pay the debt, face contempt charges in Chancery Court. If the debt is not discharged, he retains some of his credit card debt, but owes it solely to Reeda rather than to the third-party creditors. He has the ability, at the least, to make some payment on the debt, and, over time, can pay all of the debt. With the exception of his one secured debt, all of his debts are discharged in this bankruptcy, including a large debt to his parents. Indeed, since his obligations to his parents are scheduled and they have actual knowledge of this case, any support debt accruing to October 10, 1995, is also likely discharged. *See* 11 U.S.C. § 523(a)(3). In contrast, the detriment to the non-debtor should the debt not be discharged outweighs the benefit to the debtor. Reeda has already suffered harassment by the credit card companies, has had to take out a loan in order to pay the debt, is making payments on that loan, and has had to delay having a child in order to pay these debts.

The Court also notes that, through Reeda's efforts to settle substantially greater debts to the parties' creditors, the amount of the non-dischargeable debt has in fact been reduced. The debt owing to the third party creditors is discharged, and those creditors may no longer pursue him by virtue of the discharge injunction.[7] Thus, as to the third party creditors, debtor has no personal liability for those debts. Moreover, Reeda obtained satisfaction of the debts through negotiation on her own behalf and payment of particular amounts to those third party creditors. Since debtor's obligations to the third parties are discharged, the only remaining obligation is owed solely to Reeda. He is liable to her only for that portion she was required to pay in satisfaction of the debt. Thus, although an unintended result, Reeda has obtained a

7. Under the Congressional scheme, Reeda, had she not settled and paid the debts, would have remained liable to the creditors. The debt is non-dischargeable as to the former spouse only. Thus, the creditors could have continued their collection efforts against Reeda because they

cannot collect from the debtor pursuant to 11 U.S.C. § 524. The determination in this adversary proceeding will ensure that the debtor will remain subject to the state court's contempt and incarceration for contempt powers should debtor fail to pay this debt to Reeda.

reduction for him of some of the debt, enhancing his fresh start despite the nondischargeability of the debt.

The debtor not only has the ability to obtain income to pay the debt, the only detriment to nondischargeability is the mere fact he will have to pay it. He has no other debt, no dependents, and is fully employable. In contrast, in addition to the monetary effect on Reeda, Reeda's personal life has been restricted and altered to her and her family's detriment.

**ORDERED** as follows:

1. The Motion for Leave to Amend And Substitute Answer of Defendant, filed on April 2, 1996, is GRANTED.

2. The debt owed by the debtor Lynn Henson to Reeda Henson Johnson is nondischargeable pursuant to section 523(a)(15).

**IT IS SO ORDERED.**