**In re Christopher Thomas STURDIVANT, Debtor.**

**Dana Michelle Sturdivant (Cross), Plaintiff,**

v.

**Christopher Thomas Sturdivant, Defendant.**

**No. 01:02–BK–70130.**

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

Feb. 6, 2003.

---

David W. Harrod, Harrod Law Office, Hamburg, AR, for debtor.

Joseph F. Kolb, Barber, McCaskill, Jones & Hale, Mel Sayes, Matthews, Sanders & Sayes, Little Rock, AR, for creditors.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

Dana Michelle Sturdivant Cross ("Cross") filed this complaint against

Christopher Thomas Sturdivant ("Debtor") to seek a determination of the dischargeability of certain debts the Debtor was ordered to pay pursuant to a divorce decree. The threshold issue is whether the debts were intended to be in the nature of support or were incurred as a result of the property settlement between the parties. If the obligations at issue are property settlement debts ("nonsupport divorce debt"), then the Court must determine whether the Debtor has the ability to pay the debts or whether the benefit to the Debtor of discharging the debts outweighs the detriment that will be inflicted upon Cross. After a hearing upon the complaint on December 9, 2002, the Court took the matter under advisement.

This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(1), and the Court may enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### FACTS

Cross and the Debtor were married on December 26, 1992, and had two children during the marriage. Cross filed a complaint for divorce on February 22, 2001, in the Chancery Court of Ashley County, Arkansas, and the divorce was granted by decree on March 30, 2001. Neither party has remarried, and there are no other dependents to provide for other than the parties themselves and their two children

The divorce decree incorporated a previously filed Waiver, Child Custody, and Property Settlement Agreement regarding custody, child support and division of property. In that agreement, Cross was

awarded custody of the couple's two children, and the Debtor was ordered to pay $150.00 per week ($600.00 a month) in child support. The agreement does not refer to an award of spousal support or alimony. It specifically states that "Wife will be responsible for her own auto insurance, rent and utilities." (Pl.'s ex. 2.) Cross testified at the hearing that she did not request spousal support in her divorce complaint.

Under the heading "Debts & Property," the Agreement also provided:

A. Wife is awarded sole possession and ownership of the 1999 Grand AM. Husband is responsible for debt which secures this vehicle and will hold wife harmless from same. Husband agrees to sign all necessary documents to transfer title of this vehicle to wife.

B. The 1996 mobile home which served as the marital residence is awarded to the husband. Husband will be responsible for debt to Greenpoint Credit on same and agrees to hold wife harmless thereon. . . .

.　　.　　.　　.　　.

E. Husband will be responsible for the marital debts including . . . Visa and Stage credit cards . . . Husband further agrees to hold wife harmless from these debts.

(Pl.'s ex. 2.)

The debts for the car, mobile home and the two credit cards are the four debts Cross asks the Court to find nondischargeable as either support debt or non-support divorce debt.[1]

Cross testified that she was not personally obligated on the debt for the 1999

---

1. At one point in the proceedings, counsel for Cross questioned the Debtor about a debt to Associates National Bank listed on Schedule F of the Debtor's petition. Counsel indicated

that Cross was seeking a dischargeability determination with regard to that debt, but this statement contradicts Cross's own testimony and will be disregarded.

Grand AM and that the car was repossessed on December 17, 2001, when the Debtor failed to make timely payments despite his agreement to do so. Cross subsequently purchased a 1997 Grand Prix, borrowing a down payment of $1500.00 from her sister and financing the balance of $5500.00. She makes monthly payments of $245.60 for the car and will repay her sister when she receives her tax refund.

Although her husband was awarded the mobile home in the divorce, Cross is personally liable with the Debtor on the note owed to Greenpoint Credit to finance the home. The monthly payment was approximately $274.00. The Debtor testified that he surrendered the mobile home to the lender after he filed for bankruptcy and it has since been repossessed. The Debtor stated that the mobile home was sold with approximately $27,000.00 still owing on the debt and that he was uncertain as to the amount of the deficiency owed after sale proceeds were applied to the indebtedness,

Cross is also personally liable on the Visa and Stage credit cards the Debtor agreed to pay in the divorce decree. The Debtor's schedules reflect a total indebtedness of $909.28 to Visa and $576.98 to Stage. The monthly payment on these two cards is approximately $55.00 a month each.

Currently, Cross and her two children live rent-free in her mother's home, but she stated that she must find another residence in the spring. Cross pays utilities at the residence. At the trial, she submitted a list of her monthly expenses in the following amounts:

| | |
|---|---:|
| Storage | $ 25.00 |
| Electric | 125.00 |
| Water | 40.00 |
| Car | 245.60 |
| Car Insurance | 145.50 |
| Telephone | 90.00 |
| Food | 225.00 |
| Gas | 80.00 |
| FNB (5 month signature loan) | 200.00 |
| Lawyer fee | 100.00 |
| Clothes, school supplies, miscellaneous | 100.00 |
| Total expenses | 1376.10 |

(Pl.'s ex. 1.)

Cross is a high school graduate who earns $730.00 a month by tutoring at Hastings Elementary School. Her earnings and the $600.00 a month in child support result in a total monthly income to $1330.00. If she tutors another year, she will be eligible to receive a grant to help fund a four-year college education that will considerably improve her earning capacity.

The Debtor filed a voluntary chapter 7 petition in bankruptcy on January 8, 2002. He works in construction, and his skills include that of a certified welder. He travels extensively to various jobs and usually receives approximately $55.00 per diem for his expenses from his employer for food, lodging and gasoline. At the hearing the Debtor said the per diem rarely pays his total living expenses incurred on a job.

In addition to construction work, the Debtor has worked at hauling and raising cattle when he was between construction jobs. His 2001 federal income tax return showed a net income of $37,781.00, but, in the course of his employment, he incurred unreimbursed employee expense for food, lodging and vehicle expense and additional costs for gasoline and maintenance of his truck that reduce his actual yearly income to $26,356.00 a year.[2] The Debtor figures

---

2. The Debtor arrived at this figure by subtracting unreimbursed food and lodging expenses and $500.00 a month for gasoline and maintenance on his truck, which he uses in his trade. He did not subtract the $11,425.00 of unreimbursed vehicle expense related to work that he reported on his 2001 income tax form as part of a deduction he claimed. The Court accepts his testimony that $26,356.00 a year represents his income minus unreim-

this to equal about $2196.00 a month in income.

From this sum, the Debtor has the following fixed monthly expenses:

| | |
|---|---|
| Child support | $ 600.00 |
| Truck payment | 384.00 |
| Car insurance | 171.00 |
| Rent and utilities | 200.00 |
| Food | 300.00 |
| Clothing | 80.00 |
| Cleaning and laundry | 80.00 |
| Cell phone | 150.00 |
| | |
| Total | $ 1965.00 |

At the hearing, the Debtor stated that he currently resides in DeKalb, Texas, in a mobile home owned by a friend. The Debtor pays the friend $200.00 a month for his portion of the rent and utilities and keeps his belongings there. He testified that he stays at this address infrequently when he is between jobs. He receives his mail at his parents' home in Ashley County and stated that, if he so desired, he could use his parents' home as a residence when he is between jobs.

The Debtor testified that he is also required to pay occasional dental and medical bills for his two children to the extent the bills are not paid for by Medicaid. Because the Debtor did not testify as to the amount of medical expense he might reasonably be expected to pay, the Court will not consider this expense in the calculation of disposable income. Subtracting the Debtor's expenses from his monthly income results in a sum of $230.00 a month in disposable income.

## DISCUSSION

Cross first argues that some or all of the four debts at issue are in the nature of support and should be excepted from discharge pursuant to section 523(a)(5) of the

bursed work-related expenses, including unreimbursed truck expenses incurred both on

Bankruptcy Code. That Code section provides in relevant part:

(a) A discharge . . . does not discharge an individual debtor from any debt–

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement . . .

11 U.S.C. § 523(a)(5)(2000).

■ Cross has the burden of proof to show, by a preponderance of the evidence, that the debts were for alimony, maintenance or support. *Dowd & Hallisey v. Scalia (In re Scalia)*, 214 B.R. 697, 703 (Bankr.E.D.N.Y.1997) (citing *In re Silberfein*, 138 B.R. 778, 780 (Bankr.S.D.N.Y. 1992) (citing *In re Freyer*, 71 B.R. 912, 916 (Bankr.S.D.N.Y.1987))); *Williams v. Williams (In re Williams)*, 189 B.R. 678, 679–80 (Bankr.N.D.Ohio 1995) (citing *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723 (10th Cir.1993) (citing *Grogan v. Garner*, 498 U.S. 279, 290, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991))).

■ In determining whether a debt is for support, courts consider numerous factors. These include (1) whether the obligation terminates on death or remarriage of either spouse (2) characterization of the payment in the decree and the context in which disputed provisions appear; (3) whether payments appear to balance disparate income; (4) whether payments are to be made directly to spouse or to a third party; (5) whether the obligation is payable in a lump sum or in installments; (6) whether the parties intended to create an

and off the job.

obligation of support; (7) whether assumption of the debt has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are met; and (8) whether assumption of the debt has the effect of providing support necessary to insure a home for the spouse and minor children. *In re Scalia*, 214 B.R. at 703 (Bankr.E.D.N.Y.1997) (citing *In re Rosen*, 169 B.R. 512, 519–20 (Bankr.E.D.N.Y. 1994) (citing *In re Kaufman*, 115 B.R. 435, 440–41 (Bankr.E.D.N.Y.1990))).

■ Most of these factors, when applied to the debts at issue, tend to support a finding that the allocation of debt was not intended to provide spousal or child support. First, the obligations do not terminate upon the death or remarriage of either spouse but presumably upon the Debtor's repayment of the debts.

Second, the allocation of the four debts is found under the heading "Debts & Property" in the Waiver, Child Custody, and Property Settlement Agreement (Pl.'s ex. 2), and there is no specific mention of alimony or support under this heading. However, the document expressly states that the wife is responsible for her own automobile insurance, rent, and utilities. The only express discussion of support occurs under the heading "Child Custody," where the court requires the Debtor to pay child support. Thus, the context in which the disputed payments appear is clearly designated as a division of property and debt.

Third, the Debtor was instructed to make payments on the four debts directly to a third party, not to Cross. This factor leads to the inference that the allocation of payments was simply to defray the debt, not to support Cross. Fourth, the evidence demonstrates that the parties did not intend to create an obligation for support. Cross did not request alimony in

her complaint for divorce, and the Debtor testified that he never intended to pay any type of spousal support. Fifth, the allocation of the debt to the Debtor did not have the effect of providing a home for Cross and the Debtor's dependents. To the contrary, the Debtor was awarded the family residence in exchange for making regular monthly payments to the secured creditor.

It is true that it appears the allocation of the debts for the automobile and the credit cards was made to balance disparate income, the Debtor earning more than $40,000.00 a year and Cross being unemployed at the time of the divorce. It is also true that if the Debtor pays the debts, Cross is relieved of the obligations and, thus, has more money to provide for the basic needs of herself and her children. However, these factors alone are not sufficient to tip the balance in favor of a finding of spousal support when so many other factors weigh against such a finding.

For these reasons, Cross has not carried her burden to show that the four debts at issue are in the nature of support, and they will not be excepted from discharge pursuant to section 523(a)(5).

## NONSUPPORT DIVORCE DEBT

Cross also argues that the four obligations at issue are nondischargeable pursuant to section 523(a)(15) of the United States Bankruptcy Code. That section provides that a debtor may not except from discharge a nonsupport debt incurred by the debtor in the course of a divorce or separation decree unless

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of

expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15)(A) & (B) (2000).

Thus, section 523(a)(15) excepts from discharge debts that are not for support but that arise out of divorce proceedings. *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 54 (8th Cir. BAP 1998). The section provides two exceptions to this discharge exception, each of which will be discussed in turn below.

■ In a cause of action to except non-support divorce debt from discharge, the nondebtor spouse has the initial burden of proving that the debt is one incurred in connection with a divorce and is in the nature of a property settlement debt rather than a debt for maintenance or support. *Strayer v. Strayer (In re Strayer)*, 228 B.R. 211, 214 (Bankr.S.D.Ind.1996)(citing *Gantz v. Gantz (In re Gantz)*, 192 B.R. 932 (Bankr.N.D.Ill.1996); *Florio v. Florio (In re Florio)*, 187 B.R. 654 (Bankr.W.D.Mo. 1995); *Silvers v. Silvers (In re Silvers)*, 187 B.R. 648 (Bankr.W.D.Mo.1995)).

■ A property settlement incorporated by a divorce decree that apportions third party debt to one spouse means that the obligor-spouse indemnifies the obligee-spouse in the event the obligee is required to pay. *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303 (Bankr.E.D.Ark.1996)(stating Arkansas law that when debtor's obligations to third parties under divorce decree were paid by former spouse, debtor became obligated to reimburse former spouse).

■ In addition, a hold-harmless requirement in a divorce decree imposes liability upon the obligor for all consequences of his failure to pay under the agreement. *Linet v. Azia (In re Azia)*, 159 B.R. 71, 74–75 (Bankr.D.Mass.1993). Even if the obligee-spouse is not legally responsible for a particular debt owed by the obligor-spouse to a third party, other detrimental consequences to the obligee-spouse can occur if the debt is not paid by the obligor. *Fellner. v. Fellner (In re Fellner)*, 256 B.R. 898, 904 (8th Cir. BAP 2001) (observing that consequence to ex-spouse would be eviction from home if debtor did not pay credit card debt owed to ex-spouse's mother's creditor and allocated to debtor in divorce decree).

■ The fact that the obligee-spouse has refinanced or otherwise paid a divorce decree debt to or on behalf of the obligor-spouse does not affect the dischargeability of the debt in bankruptcy. *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 327 (Bankr.N.D.Ohio 1996) (citing *Williams v. Williams (In re Williams)*, 189 B.R. 678, 680 (Bankr.N.D.Ohio 1995)(citing *Robinson v. Robinson (In re Robinson)*, 921 F.2d 252, 253 (10th Cir. 1990) (agreeing with district court that the status of the underlying debt has no effect on the original obligation to hold one's spouse harmless))).

With regard to the four debts at issue in this case, Cross has met her initial burden of showing that the debts are nonsupport divorce debt. The Court's analysis of the debt under section 523(a)(5) discusses why the payment of the debts by the Debtor is not in the nature of support and will not be repeated here.

The chancery court clearly apportioned each of the four debts to the Debtor to pay as part of a division of marital property and debt. Under Arkansas law, the effect of the decree is that the Debtor indemnified Cross in the event Cross had to pay

the debts. The fact that the Debtor was instructed to hold Cross harmless for these debts is further confirmation that liability is imposed upon the Debtor for any consequences of his failure to pay. With regard to each debt, the property settlement agreement has created an obligation directly from the Debtor to Cross. The Debtor, not Cross, must suffer all consequences of his failure to pay.

The fact that Cross is held personally liable by Stage, Visa, and Greenpoint means that the Debtor must indemnify her from those liabilities by continuing to make payments on the debt. This indemnity also applies to the debt for the Grand Am, even though the car has been repossessed and Cross is not personally liable for the deficiency. The Debtor's obligation under the property settlement agreement is not to the secured creditor of the Grand Am, but to Cross, who suffered the consequence of having to purchase another car with her own funds. The Debtor must hold Cross harmless by making payments to Cross in the amount she pays for the replacement vehicle, and he must also reimburse her for any down payment she pays as a consequence of his failure to pay for the Grand Am. *Accord Salerno v. Crawford (In re Crawford)*, 236 B.R. 673, 678 (Bankr.E.D.Ark.1999) (finding that debtor owed his former spouse nonsupport divorce debt for loan from former spouse to debtor to pay third-party debt allocated to debtor in divorce-related obligations); *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303 (Bankr.E.D.Ark.1996) (stating that debtor owed former spouse nonsupport divorce debt when she paid the debts that debtor was ordered to pay third parties in divorce decree).

For these reasons, the Court finds that Cross has proved that the obligations at issue are owed to Cross, were incurred by the Debtor in the course of a divorce, and are presumptively nondischargeable pursuant to section 523(a)(15).

## ABILITY TO PAY

■ Cross having proved the four obligations at issue are nonsupport divorce debts, the burden of proof shifts to the Debtor to show either that he is unable to pay the debts or that the benefit to him of discharging the debts outweighs the detriment that will be suffered by Cross. *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 56 (8th Cir. BAP 1998) (citing *Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 139–40 (9th Cir. BAP 1997); *Johnson v. Rappleye (In re Rappleye)*, 210 B.R. 336, 340 (Bankr.W.D.Mo.1997); *Williams v. Williams (In re Williams)*, 210 B.R. 344, 346 (Bankr.D.Neb.1997); *Wellner v. Clark (In re Clark)*, 207 B.R. 651, 655–56 (Bankr. E.D.Mo.1997); *Scigo v. Scigo (In re Scigo)*, 208 B.R. 470, 473 (Bankr.D.Neb.1997); *Wynn v. Wynn (In re Wynn)*, 205 B.R. 97, 101 (Bankr.N.D.Ohio 1997); *Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312, 316 (Bankr.W.D.Ark.1996); *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303 (Bankr.E.D.Ark.1996); *Bodily v. Morris (In re Morris)* 193 B.R. 949, 952 (Bankr. S.D.Cal.1996)).

The first issue to resolve is whether the Debtor has the ability to pay the debts at issue. The four obligations total approximately $629.60 a month and an additional $1500.00 to reimburse Cross for the down payment on the automobile. The Debtor calculates a disposable income of $230.00 a month to pay extra monthly expenses. However, in examining the Debtor's fixed expenses, the Court finds there is sufficient padding in the Debtor's budget to allow for payment of the four debts he seeks to discharge.

■ For example, the Debtor pays $200.00 a month for rent and utilities for a residence he rarely uses. Admittedly,

shelter is a basic maintenance need of the Debtor that, under the statute, takes precedence over paying nonsupport divorce debt. But in this case this monthly expense seems to buy little more than storage, a place for the Debtor to keep his belongings. His employment requires him to travel throughout the year, and he therefore spends time at the residence only infrequently. The Debtor admits that he receives his mail at his parents' home and that he could also use their residence as a home base if he chose to do so. Under the circumstances, this expenditure is a luxury rather than a necessity.

■ Similarly, the Debtor lists a monthly food expense of $300.00. However, the Debtor arrived at a total of $2196.00 a month income to fund his basic needs by subtracting from his net income the unreimbursed food expense he incurs on the road. Additionally, he receives per diem payments that defray at least some food costs incurred while traveling, although this precise figure is not shown by the record. Considering that the Debtor already subtracted a substantial portion of his food cost before he arrived at a monthly income of $2196.00 and that he receives some type of food subsidy from his per diem, the Court concludes that an additional $300.00 per month food allocation is excessive, and the amount allowed for food should be reduced to $150.00 a month.

■ The Court also notes that the Debtor spends $150.00 a month on cell phone service. He states that this is a necessary expense incurred in the course of his employment because he must maintain contact with future employers while he is on the road. The Court accepts the fact that the Debtor requires a cell phone for his business, but believes the Debtor can pare this expense by $50.00 by making use of an answering machine at his home base and a phone credit card used in in-stances when he can place or return long distance calls at a cheaper rate from a stationary telephone.

Finally, the Debtor's requirement of $80.00 per month for laundry and cleaning is excessive. Ten dollars a week, or $40.00 per month, is an ample amount for an individual to spend at a coin-operated laundry where he can wash and dry his own work clothes.

■ Reducing the Debtor's expenses as suggested yields an additional $440.00 per month. Adding this sum to the $230.00 per month already designated as disposable income totals $670.00, enough to make the required monthly payments on the nonsupport divorce debt and a small payment every month toward the down payment owed on Cross's automobile.

The Court also observes that in the past the Debtor has engaged in several money-making ventures to supplement his income. The record does not reflect how much in annual income these ventures have netted in the past, but it is at least conceivable that the Debtor will earn extra income in the foreseeable future in addition to earnings from construction jobs. Any supplemental income will provide the Debtor a cushion to meet unforseen expenses that may arise.

Furthermore, the total debts to Stage and Visa are relatively small and will be defrayed within the next several months if the Debtor continues to pay $55.00 each on the obligations. Thus, in the near future, the Debtor will be free of these two payments, creating $110.00 a month in disposable income.

Therefore, the Court finds that the Debtor did not carry his burden to prove that he does not have the ability to pay the nonsupport divorce debts. The Debtor can pay the debts from disposable income not reasonably necessary for the support

of himself and his dependents or for expenditures necessary for the continuation of his business.

## BENEFIT TO DEBTOR VERSUS DETRIMENT TO CROSS

■ The final issue to resolve is whether the benefit to the Debtor of discharging the debts outweighs the detriment that will be suffered by Cross. This issue requires the Court to compare the financial condition of the parties.

■ The Debtor testified that he made $44,439.00 in adjusted gross income in 2001 and by his own calculation, the Debtor has $2196.00 in monthly income to fund his and his dependents' basic needs. By comparison, his former spouse nets $730.00 a month by tutoring in elementary school. It is unclear from the record whether this sum is earned twelve months out of the year. Assuming Cross is employed year around, she has a monthly income of $1330.00 when child support is added to her earnings. Even when the $600.00 a month child support payment is subtracted from the Debtor's monthly income, he still has more monthly income to fund his own expenses than does Cross, who must provide not only for herself but also for the two children in her parental custody.

Moreover, Cross's expenses exceed her income while the Debtor actually has considerable monthly disposable income. Unlike the Debtor's fixed expenses, Cross's monthly expenditures are not padded. For example, she allocates only $225.00 a month for food for herself and her two children, while the Debtor's food allocation was $300.00 a month for food for himself alone, not taking into account the reimbursed and unreimbursed food costs he subtracted before arriving at his monthly income.

Clearly Cross's earning capacity is minimal at this time. The Court can discern no way that she will be able to assume the deficiency payments on the mobile home or the payments to Stage and Visa in the foreseeable future. On the other hand, to pay these debts will be burdensome to the Debtor, but not impossible. Additionally, the only way Cross will be able to pay rent in the near future is if the Debtor pays her for the automobile she was forced to purchase when he failed to pay on his original obligation.

One bankruptcy court has surmised that the balancing test required by the statute "is intended to avoid imposing non-dischargeability on a debtor/spouse where the non-debtor spouse has independent means, wealth, or a lack of need of the particular payment involved or, arguably, where the non-debtor spouse has no assets that can reached by creditors." *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 675 (Bankr. E.D.Ky.1996). Here, the Debtor failed to show that Cross has the means or the assets with which to pay the debts at issue. To the contrary, the evidence demonstrates that she and her children live on the edge of poverty. By contrast, the Debtor makes a decent living that is somewhat reduced in substance by extraordinary travel expenditures.

For these reasons, the Debtor has failed to show that the benefit of discharging the nonsupport divorce debts outweighs the detriment that will be imposed on Cross if she is forced to assume the debts.

## CONCLUSION

The Court rules that the Debtor's obligations to Cross to pay Greenpoint Credit, Visa, and Stage and to provide Cross with an automobile are nondischargeable pursuant to section 523(a)(15).

IT IS SO ORDERED.