■ CHARLES BARAX, Appellant, v SHARON BARAX, Respondent. [667 NYS2d 733] —Order, Supreme Court, New York County (Marylin Diamond, J.), entered June 26, 1997, holding that defendant wife could enroll one of the parties' children in a Conservative Jewish day school, and awarding the wife $5,000 in counsel fees, unanimously modified, on the law and the facts, to vacate as moot that portion of the order relating to the Conservative school and to remand the matter for a hearing as to whether the wife can enroll the child in a secular private school, and otherwise affirmed, without costs. Order, same court and Justice, entered August 27, 1997, denying the husband's request for attorney's fees, ordering the husband to produce his 1995 and 1996 tax returns, and ordering him to pay $25,000 for the wife's attorney's fees and to pay a $71,875 judgment that had been entered against the husband and wife jointly, unanimously affirmed, without costs.

On January 19, 1996, Charles and Sharon Barax (henceforth husband and wife) settled a divorce action commenced by the husband in 1992, and completed the divorce stipulation in court before Justice Fisher-Brandveen. This stipulation survived and did not merge in the judgment, which was filed on May 10, 1996. The parties agreed to joint custody of their three children, who live with their mother: the twins Harry and Ariel, born in 1982, and Eliyahu, born in 1985. Harry suffers from chronic granulomatous disease, an autoimmune disorder.

At issue in this proceeding are two provisions of the stipulation and judgment. One relates to the wife's obligations with respect to Harry's religious education. The other concerns the effect of the husband's November 4, 1996 bankruptcy discharge on his liability for a $71,875 judgment obtained by the Hebrew Academy of Nassau County (HANC) against the husband and wife jointly for unpaid tuition for the couple's children.

The husband and wife are both Orthodox Jews and have raised the children in this tradition. The relevant provisions of the stipulation are as follows:

"[T]he mother shall raise the children in the Jewish Orthodox tradition and use her best efforts to do so wherever practical. Whatever is done for the children shall always be in the best interest of the child. * * *

"All parents ought to have a joint decision with respect to the children's school, health, religious and life style decisions, all of which shall be in the best interest of the child. * * *

"It is anticipated that the children will attend a Hebrew school which will give the children a Jewish religious education, as well as the secular education, orthodox education, and that Sharon Barax shall make the appropriate payments to the children's school through high school".

These provisions were included in the judgment as well. The stipulation and judgment also give the parties the right to apply to the court if they cannot agree on what would be in the child's best interests.

Initially, at the time of the divorce, all three children attended HANC, which is an Orthodox day school. However, at present, only Ariel and Eliyahu attend HANC. Harry is enrolled in the Beekman School, a secular private school. The wife had intended to enroll him in the Solomon Schechter Day School, a Conservative school, but he was not accepted at the school. When this matter was before the IAS Court, it was assumed that Harry would get into the Solomon Schechter Day School. Accordingly, the IAS Court compared the Orthodox to the Conservative school when deciding whether a transfer would be in Harry's best interests. Since the schools being compared have changed, this issue should be remanded for a new "best interests of the child" hearing.

The husband argues, as he did in the IAS Court, that the stipulation and judgment virtually mandate the wife to send Harry to an Orthodox day school even against the youth's wishes. Essentially, he urges this Court to construe "best interests" so narrowly that only a serious threat to Harry's health would justify removing him from HANC or an equivalent Orthodox school. We are convinced of the superior rationality of the IAS Court's approach. The court considered that Harry was unhappy at a school where he was ostracized because he did not agree with all of the Orthodox rituals, and that stress worsens his condition, a claim supported by a doctor's affidavit. However, since Harry is not attending the school upon which the court based its decision, a new hearing is required to determine whether the current school arrangements are in the child's best interests.

In his motion papers, the husband downplayed Harry's serious illness and treated his claim of hardship as nothing but an excuse for permissive child-rearing. The wife's affidavit in opposition to the husband's motion before the IAS Court also contained uncontradicted allegations that now that *she* is obli-

gated to pay tuition, the husband insists on an Orthodox private school, but when *he* had to pay tuition prior to the divorce, he enrolled the children in secular public schools after running up over $70,000 in unpaid tuition bills to HANC. In light of these circumstances, the IAS Court properly exercised its discretion in awarding the wife $5,000 in counsel fees on the grounds that the husband's motion was in bad faith.

Before the divorce, HANC obtained a $71,875 judgment against the husband and wife jointly, for unpaid tuition for their children. At the time of the parties' divorce, the judgment was still unpaid. When the stipulation was being negotiated, the wife's attorney suggested that the husband would be liable for the debt unless he filed for bankruptcy. However, the stipulation drafted by the husband's attorney simply provided that he would assume sole responsibility for the debt, with no mention of bankruptcy. Subsequently, the husband filed for and obtained a discharge in bankruptcy, which listed the HANC debt as one of the discharged debts. The wife now contends that this debt was not dischargeable under 11 USC § 523 (a) (5) (B), which provides that a debt that "is actually in the nature of alimony, maintenance, or support" is not dischargeable. We agree.

At the outset, we reject the husband's argument that this Court lacks jurisdiction to consider the dischargeability of the HANC debt because no action is currently pending in the Federal bankruptcy court. Concurrent jurisdiction simply means that a bankruptcy case must be "pending either at the time *or before* the state court addresses the issue" (*In re Bonheur*, 148 Bankr 379, 384 [emphasis added]).

In determining whether a debt is in the nature of alimony, maintenance or support under section 523 (a) (5) (B), the court should look at the actual function served by the spouse's assumption of liability, rather than merely relying on the formal characterization of the debt in the divorce stipulation and judgment (*Kubera v Kubera*, 200 Bankr 13, 16). Since the debt was for the children's tuition, and was incurred in furtherance of the husband's pre-divorce obligation to provide for their education, it should be considered child support rather than a property settlement (*see, In re Lewis*, 39 Bankr 842, 845). Moreover, HANC will expel Ariel and Eliyahu unless the debt is paid soon. The husband's post-divorce obligation to provide for them should include payment of a debt that affects their ability to proceed with their education, especially in light of his insistence that HANC is virtually the only acceptable school for his children.

Finally, if the husband were discharged, the wife would have to pay the entire judgment because it was entered against them jointly. Her sole source of income is the alimony and maintenance payments she receives from the husband. Thus, his assumption of this debt was in lieu of higher alimony payments that would have enabled her to pay it. The "inadequacy of her income and the child support payments to support herself and her child should she have remained primarily liable on the debts" weighs in favor of finding the debt nondischargeable (*In re Petoske*, 16 Bankr 412, 414). The same is true of the husband's agreement to pay the wife's $25,000 attorney's fees from the underlying divorce action. This type of agreement has traditionally been considered a non-dischargeable debt (*In re Spong*, 661 F2d 6, 11). The husband should be held liable for both of these debts because they should not have been discharged pursuant to 11 USC § 523 (a) (5) (B).

We have considered appellant's remaining contentions and find them to be without merit. Concur—Milonas, J. P., Rosenberger, Ellerin, Nardelli and Colabella, JJ.