In re Mathew T. WEED, Debtor.

Holly Lakeman, Plaintiff,

v.

Mathew T. Weed, Defendant.

Bankruptcy No. 11–37943.
Adversary No. 12–3064.

United States Bankruptcy Court,
D. Minnesota.

Sept. 18, 2012.

David J. Wymore, Daniels & Wymore PLLC, Plymouth, MN, for Plaintiff.

## ORDER GRANTING SUMMARY JUDGMENT TO PLAINTIFF

GREGORY F. KISHEL, Chief Judge.

This adversary proceeding for determination of dischargeability of debt came before the Court on August 28, 2012, on the Plaintiff's motion for summary judgment and on the Defendant's responsive motion, styled as one for dismissal. The Plaintiff ("Lakeman") appeared by her attorney, Erich Hartmann. The Defendant ("Weed") appeared *pro se.* On the record made for the hearing, the Court ruled that Lakeman was entitled to a determination of nondischargeability on one of her pleaded theories, but not on the other. So, Lakeman's motion for summary judgment is granted in part; and Weed's responsive motion is granted in part. Judgment will be entered in favor of Lakeman, determining that Weed's debt to her is excepted from discharge under Chapter 7. The following memorandum is entered pursuant to Fed.R.Civ.P. 52(a) and Fed. R. Bankr.P. 7052, to memorialize and supplement the rulings made at the hearing.

Lakeman and Weed are the parents of a minor child, ATW, who is now eight years old. Lakeman and Weed have never been married. Weed acknowledges that he is the father of ATW.

The relevant history has an international dimension. Lakeman is a citizen and resident of Canada. Weed is a citizen and resident of the United States. In 2010, Lakeman commenced a proceeding in the United States District Court for this district under the Hague Convention on the Civil Aspects of International Child Abduction, art. 2, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, reprinted in 51 Fed.Reg. 10,494 (Mar. 26, 1986) ("the Hague Convention"), as implemented in federal statute ,by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11610 (2009) (the "ICARA").

Through that proceeding, Lakeman sought the physical return of ATW from Weed. At that time, ATW was living with Weed, and had been with him in Minnesota for about ten months.

Lakeman requested relief under the Hague Convention, on the grounds that Weed had "wrongfully removed or retained" ATW within the meaning of the Convention, as implemented in the United States. After a two-day trial, the District Court (Frank, J.) found that Lakeman had made an unrebutted prima facie case for the relief she sought. Lakeman was awarded "physical custody of ATW for the purpose of returning ATW to his habitual residence in Canada." The parties were directed to "work together to arrange a schedule for ATW to travel to Canada." *Lakeman v. Weed,* Civ. No. 10–4265, Findings of Fact, Conclusions of Law, and Order [Dkt. No. 33] (D.Minn. Dec. 13, 2010) ["Hague Convention Order"], 8, 11–12, 13, 14.

A decision on Lakeman's request for an award of attorney's fees was reserved, pending further submissions to the court. In a memorandum opinion and order entered on March 2, 2011, Judge Frank awarded Lakeman attorney's fees and costs in a total of $32,770.00. He based the award on an analysis of Lakeman's request against governing law, plus a comparison of the parties' respective financial circumstances. *Lakeman v. Weed,* Civ. No. 10–4265, Memorandum Opinion and Order [Dkt. No. 44] (D.Minn. Mar. 2, 2011), ["Attorneys' Fees Order"], 2–5.

Weed's bankruptcy filing under Chapter 7 followed, on December 28, 2011. Lakeman commenced this adversary proceeding. Through it, she sought to have the award of attorney's fees excepted from discharge under alternate theories, 11 U.S.C. §§ 523(a)(5) and 523(a)(15). She moved for summary judgment, on the basis of the entry, content, and implications of Judge Frank's findings and orders. Weed disagrees with some of Judge Frank's fact-finding, but he does not deny that the District Court's decisions are final, are not subject to appeal now, and are binding on both parties. Given the nature of the material facts identified by the governing substantive law,[1] this adversary proceeding was ripe for summary adjudication on the record presented. Fed. R.Civ.P. 56(a), *as incorporated by* Fed. R. Bankr.P. 7056 (allowing grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

This presents an apparent case of first impression; a thorough review of extant bankruptcy-law jurisprudence does not reveal a single published decision treating the dischargeability of an award of attorney's fees under the Hague Convention and the ICARA under either §§ 523(a)(5) or 523(a)(15), from any court at any level in the federal system. However, it is possible to build out a result "from bricks," i.e., by applying the governing language of the Bankruptcy Code and its more general construction in extant case law, to the detailed content of the District Court's two decisions.

The statutory structure for the Plaintiff's theory of nondischargeability is intertwined at least in part. 11 U.S.C. § 523(a)(5) provides for an exception to discharge for "any debt ... for a domestic support obligation." Since the enactment of the Bankruptcy Abuse Prevention and

---

**1.** See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (materiality of facts at issue for summary judgment depends on whether they are outcome-determinative under governing substantive law).

Consumer Protection Act of 2005, Pub.L. No. 109–8, "domestic support obligation" has been a defined term, 11 U.S.C. § 101(14A) (about which, more later). In turn, the post–2005 text of 11 U.S.C. § 523(a)(15) excepts from discharge "any debt ... to a spouse, former spouse, or child of the debtor and not of the kind described in [11 U.S.C. § 523(a)(5) ] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit."

Between them, these two provisions evidence a strong congressional intent: the bankruptcy process may not affect a wide range of personal obligations of payment that are created through legal processes under domestic-relations and family-law jurisdiction.

The current version of § 523(a)(5) carries forward the Code's longstanding exception for debts arising from obligations to pay alimony, spousal maintenance, and child support. H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1978); S.Rep. No. 989, 95th Cong.2d Sess. 79, 1978 U.S.C.C.A.N. 5963 (1978). Since 2005, this exception has been framed through the statutory definition for "domestic support obligation" under 11 U.S.C. § 101(14A). Section 523(a)(5) encompasses all sorts of debt obligations that arise out of the fixing and liquidation of a debtor's duty under nonbankruptcy law to provide support to the debtor's children, the debtor's present or former spouse, or the "legal guardian" or "responsible relative" of a child of the debtor. In those parts pertinent to the matter at bar, the framing definition provides:

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under [the Bankruptcy Code], ..., that is—

(A) owed to or recoverable by—

(i) a ... child of the debtor or such child's parent, legal guardian, or responsible relative ...

...

(B) in the nature of alimony, maintenance, or support, ... of such ... child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under [the Bankruptcy Code], by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the ... child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

In turn, the post–2005 text of § 523(a)(15) goes out to the boundary of a particular class of debt created by the application of family law, beyond a subclass of such debt already covered by § 523(a)(5) (about which, more later). The extent of that boundary is one of the issues at bar, in relation to Weed's debt to Lakeman.

■ Lakeman's argument for nondischargeability takes the sense of this extension, and runs hard with it. As Lakeman

would have it, the District Court's order under the Hague Convention and the ICARA is an "other order of a court of record," and hence the attorney-fee award falls within the exception of this section— merely because it has an origin in such an order.

This pitch is flawed in its own right, and on a preliminary ground as well.

In the first place, § 523(a)(15) is specifically limited to debts "to a spouse, former spouse, or child of the debtor." The debt here does not run to a person in any of those categories. Lakeman is the only named beneficiary of the award, and she and Weed were never married. To fill that gap, Lakeman's counsel cites published decisions under earlier versions of § 523(a)(5), where courts held that awards of attorney's fees qualified as debts "in the nature of" alimony or child support within the scope of § 523(a)(5)—despite their being payable to parties who were not children of the debtor or current or former spouses of the debtor: *In re Maddigan*, 312 F.3d 589 (2d Cir.2002); *In re Hudson*, 107 F.3d 355 (5th Cir.1997); *In re Wilson*, 380 B.R. 49 (Bankr.M.D.Fla.2006); *In re Lombardo*, 224 B.R. 774 (Bankr.S.D.Cal. 1998).

Counsel's unvoiced thought is that the specific phrase "to a spouse, former spouse, or child of the debtor" in pre–2005 § 523(a)(5) meant little to those courts as a limitation on the scope of the debt subject to exception from discharge, and the same wording now used in post–2005 § 523(a)(15) should be deemed equally meaningless. This argument is without merit. The decisions cited were not based on judicially-responsible construction of language that expressly and unambiguously created a class of protected creditor.

There is no warrant to carry the legerdemain into § 523(a)(15).

Beyond that, there is the categorization within the statutory wording, going to the *origin* of the debt. Obviously the District Court's award of attorney's fees is not a debt "incurred ... in the course of a divorce or separation or in connection with a separation agreement [or] divorce decree." That wording signifies court proceedings in regulation of the breakdown or dissolution of a legally-contracted marriage relationship. There was no marriage here. The Hague Convention proceeding was not one for dissolution of marriage or legal separation.

That much was patent. So, Lakeman's counsel would have the debt saved by placing it into the catchall phrase that follows, "or other order of a court of record."

As noted at the hearing, the limiting sense otherwise to be gleaned from the statute would be swallowed by a generality, were this argument credited. Without much of a stretch, the Plaintiff's construction would except from discharge a debt on account of a business loan made by an individual to an ex-spouse long after they were divorced, merely because that debt had been reduced to judgment.[2] That would be far beyond the legislative intent otherwise to be gleaned from the subject matter specifically identified in the statute. It would also go against the thrust of the section's cross-reference to another Code section that is concerned *only* with debts arising under the statutory law of domestic relations. In their joint operation, § 523(a)(15) begins *after* § 523(a)(5) operates; and then § 523(a)(15) makes nondischargeable all *other* debts running between spouses or ex-spouses that were

---

**2.** Such a scenario is not improbable. Nowadays, not all divorces result in eternal enmity and estrangement.

created under divorce decrees, decrees of separate maintenance, or any other court judgment that parses out the consequences of the breakdown of a marital relationship.[3]

■ This reading of § 523(a)(15) is also supported by the doctrine of *ejusdem generis*. Under this canon of statutory construction, general words at the end of a statutory enumeration are construed to embrace only objects similar in nature to those identified by the specific words that fall earlier in the statute's enumeration. *See United States v. Walker*, 393 F.3d 819, 824 (8th Cir.2005); *United States v. Vig*, 167 F.3d 443, 448 n. 8 (8th Cir.1999).

■ To be sure, *ejusdem generis* is not to be applied mechanically in a couple of situations: where such a construction of general words would be contrary to express legislative history (*United States v. McCall*, 439 F.3d 967, 979 (8th Cir.2006)); or where the larger structure of the statute carries enough meaning that there is no ambiguity in the use of the general words (*United States v. Vig*, 167 F.3d at 448; *Donovan v. Anheuser–Busch, Inc.*, 666 F.2d 315, 327 (8th Cir.1981)). Here, there is virtually no legislative history for

BAPCPA in general, and there is none for the current text of § 523(a)(15) in specific. As evidenced by the absurd result from the logical extension noted above, the statute is ambiguous enough to merit using an abstract canon of construction. *Ejusdem generis* dictates that the general class of debt under § 523(a)(15) run from the debtor to the debtor's spouse, former spouse, or child, and that it have been created under a court's decision in a proceeding for divorce or legal separation, or in some other sort of proceeding governed by the state law of *domestic relations* if the proceeding was not among those more common ones.[4]

So, the debt in question here does not fall within the scope of § 523(a)(15). Lakeman is not entitled to a judgment of nondischargeability under that provision.[5]

Lakeman's bid for nondischargeability under § 523(a)(5) requires a more nuanced analysis, but ultimately it is successful. In contrast to § 523(a)(5), the statutory language recognizes more links between her, as named obligee, and Weed, as obligor, to support her case.

■ First, the debt is owed to her, and she is a "parent, legal guardian, or respon-

---

**3.** Obvious examples would be debts arising from division of marital property; obligations to indemnify and hold harmless the other marital partner from marital debts; and, yes, awards of attorney's fees incurred *in connection with a proceeding for divorce or legal separation*.

**4.** To like outcome, though not on quite the same rationale, courts have limited the statute's application to situations of "some type of 'marriage' relationship where there has been a separation...." E.g., *In re Hutchins*, 193 B.R. 51, 54 (Bankr.N.D.Ala.1995) (construing language of § 523(a)(15) effective between 1994 and 2005).

**5.** Thus, Weed is entitled to judgment in his favor on that theory of nondischargeability. It does not matter whether his "motion for

dismissal" is treated as one for summary judgment, Fed.R.Civ.P. 12(d), *as incorporated by* Fed. R. Bankr.P. 7012(b), or whether summary judgment is granted *sua sponte* as the record fully supports on the merits. *See, e.g., Figg v. Russell*, 433 F.3d 593, 597 (8th Cir. 2006); *Bendet v. Sandoz Pharm. Corp.*, 308 F.3d 907, 912 (8th Cir.2002); *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 595 (8th Cir.1995); *Interco Inc. v. Nat'l Sur. Corp.*, 900 F.2d 1264, 1268–1269 (8th Cir.1990) (court may grant summary judgment to a nonmoving party *sua sponte* where all material facts are uncontested, all legal issues going to both sides' positions were raised by opposing party's motion, and both sides have had ample opportunity to fully develop their positions on the issues).

sible relative" of ATW, Weed's child. Thus, her status as the petitioner-parent in an extrinsic, pre-petition proceeding that involved ATW's status as the child of both parties, makes Lakeman a creditor entitled to argue for the nondischargeability of a debt that was imposed on Weed in that proceeding, as a "domestic support obligation." *See* 11 U.S.C. § 101(14A)(A)(i).[6]

The central, substantive contention between the parties is whether the attorney-fee award is "in the nature of . . . support . . . of such . . . child of the debtor or such child's parent," to satisfy 11 U.S.C. § 101(14A)(B).

■ One threshold, semantic issue is made easy by the statute itself; it does not matter whether the award "is expressly so designated," i.e., denominated as child support in so many words in the original adjudication. If the facts and circumstances establish the award as "in the nature of" child support, it qualifies.

■■ To establish that "nature," Lakeman's attorney analogized the award, made though it was under direct federal statutory authorization,[7] to the awards of attorney's fees that are often made in conjunction with divorce and child support proceedings under state law. *E.g.*, Minn. Stat. § 518.131 subd. 1(d) (authorizing award of reasonable attorney's fees as part of temporary order in dissolution proceeding) and § 518A.735(a) (allowing recovery of attorneys' fees "incurred to enforce a child support judgment" against obligor). Awards of attorney's fees in divorce decrees and other family court orders can be considered to be "in the nature of" child

support, and hence nondischargeable under § 523(a)(5). *In re Williams,* 703 F.2d 1055, 1056 (8th Cir.1983). To determine the "nature" of an award, the bankruptcy court must determine the function that it was intended to serve, i.e., as family support or as something else. *Adams v. Zentz,* 963 F.2d 197, 200 (8th Cir.1992); *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984). This is a matter of federal bankruptcy law, and not of state law. *In re Williams,* 703 F.2d at 1056; *In re Phegley,* 443 B.R. 154, 158 (8th Cir. BAP 2011).

In response to Lakeman's analogy, Weed emphasizes that a proceeding under the Hague Convention and the ICARA is not a proceeding to establish custody over the subject child. He is correct on that limited point. *See* Hague Convention, Art. 19 ("A decision under this Convention concerning the child shall not be taken to be a determination on the merits of any custody issue"); 42 U.S.C. § 11601(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims"). Weed's thought seems to be that a necessary incident and consequence of any custody decision is the determination of resultant child support obligations in the parties. Thus, Weed argues, because a binding custody determination in the state-law sense cannot be made in a proceeding under the Convention, the ancillary attorney's-fee award to Lakeman cannot possibly be considered as child support or something in its nature.

---

6. If one conceives of "standing" in a more connotative sense than is usually done in the federal courts, it could be said that § 523(a)(5) gives broader standing on which to seek nondischargeability than does § 523(a)(15). Put another way, the class of creditor protected by the statute is broader.

7. *See* 42 U.S.C. § 11607, authorizing a prevailing petitioner under the ICARA to recover necessary expenses, including attorney's fees, in prosecuting a petition under the Hague Convention.

As Weed correctly notes, Judge Frank expressly stated that he was not making a decision on the custody of ATW, as commonly considered. Hague Convention Order, at 13. Judge Frank limited his analysis and the accorded relief to that for which the Hague Convention functions—to determine whether Weed "wrongfully removed or retained" ATW within the meaning of the Hague Convention, and upon such a finding to "return[ ] ATW to his habitual residence," i.e., Canada, as the Convention and the ICARA contemplate. Hague Convention Order, at 7–8 and 13.[8]

The sense of Weed's argument is that qualification as a domestic support obligation requires an origin in a comprehensive proceeding through which all of both parents' rights and duties as to a child are fixed, as a long-term matter. But, the statutory definition does not require an origin in a specific type of legal proceeding, on its face or by implication. Under the longstanding judicial construction of the words "in the nature of," the focus has to be on the award itself, as it functions in relation to the needs and interest of the dependent person who is ostensibly "supported" by the operation of the award.

In that regard, the deeper function of the Hague Convention speaks to the judicial contemplation that necessarily backs any award of attorney's fees to a prevailing petitioner. Perforce, the recipient of such an award is a foreign national, who enters and subjects to a Convention-signatory forum state, seeking local judicial empowerment to return the child to its habitual residence that is outside the forum jurisdiction, in the interests of restoring continuity and stability in the child's everyday, physical environment. *See Barzilay v. Barzilay*, 600 F.3d 912, 917 (8th Cir.2010) (key inquiry under Hague Convention is whether child has been wrongfully removed from country of its habitual residence or wrongfully retained in country other than that of its habitual residence). Compared to the milieu of more traditional family law, the remedies of the Convention are extraordinary. They apply to anomalous situations: the crossing of international boundary lines and all that entails in issues of jurisdiction and comity; the subjection to alien legal forums with all attendant complications; and the incurring of significant extraordinary expense to advocate for the child's interests, both transactional (attorney's fees, litigation expenses, court costs) and functional (travel, accommodation, etc.). In providing for the reimbursement of such expenses, the ICARA reflects a tacit recognition: a prevailing petitioner may regain physical custody of a removed child by invoking the Convention and the Act, but only at a cost outside the expenses of everyday life. So, the ICARA implements the statutory goals by mandating the forum court to "order the respondent to pay necessary expenses incurred by or on behalf of the petitioner," "unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3).

---

8. To accord relief under the Hague Convention and the ICARA, Judge Frank did grant Lakeman physical custody, in so many words. But, this vesting and its temporary nature cannot be pivotal, to either sides' advantage. He granted temporary physical custody for the express purpose of returning ATW to Canada. Hague Convention Order at 13. This established Lakeman's legal authority to remove ATW to the United States–Canadian border. The reason for doing this is obvious, as there had been no prior formal adjudication of custody for ATW, a child born out of wedlock. Its prudence is patent, from the standpoint of fixing United States and Canadian jurisdiction over the child, while within the respective forums' boundaries and especially for the purposes of establishing right of entry at the border.

Such a presumptive entitlement is a restorative measure for the petitioner-parent. If the respondent-obligor complies, an award will make whole the prevailing party for the costs of restoring the child to the original national jurisdiction, after that party incurred the costs in consequence of the respondent-parent's removal of the child without legal warrant.[9] As such, it mirrors the Convention's goal to restore the *status quo ante* as to the child's physical presence and the resultant forum-jurisdiction over the child. *See Silverman v. Silverman*, 338 F.3d 886, 899 (8th Cir. 2003) (*en banc*).

That all speaks to the legislative contemplation generally, as to the effect of an award of attorney's fees under the ICARA. In passing on the dischargeability of a court-created debt obligation alleged to be "in the nature of" support, the crucial question is the function the award was *intended* to *serve*. *Adams v. Zentz*, 963 F.2d at 200; *Boyle v. Donovan*, 724 F.2d at 683; *In re Phegley*, 443 B.R. at 157. This issue is governed by the federal law of bankruptcy, not the nonbankruptcy law that governed the award as made originally. *In re Williams*, 703 F.2d at 1056.[10] *A fortiori*, when the debt obligation was created by a court decree, the relevant intent is that of the judge who made the award.[11]

The attorney's fee award at issue undeniably aligned with the underlying statutory purpose, to promote a return to the status quo ante for Lakeman and ATW. And, as obviously, the focus was on a preexisting financial condition. The cost of Lakeman's vindication across international boundary left her saddled with a large debt she would not have incurred otherwise, which she would have to pay over time. In determining what "necessary expenses" to impose on Weed pursuant to the statutory mandate, Judge Frank assessed the reasonableness of the attorneys' fees charged to Lakeman. He parsed out the expenses she claimed, by allowing some and rejecting others as unnecessary "to the return of the child." And finally, he awarded an amount less than the resultant quantum, after weighing both parties' financial circumstances in order to make an award that would not be "clearly inappropriate." Attorneys' Fees Order at 5. The direct benefit of the award inured to Lakeman, obviously; so to the extent such considerations molded the final award, they in isolation do not require that

9. A 1986 notice by the United States Department of State shares this interpretation of the attorney's-fee provision:

> Any court ordering the return of a child pursuant to an action brought under [ICARA] shall order the respondent to pay *necessary expenses* incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be *clearly inappropriate.*

Hague Convention on the Civil Aspects of International Child Abduction, art. 2, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, reprinted in 51 Fed.Reg. 10,494 (Mar. 26, 1986) (emphasis added).

10. Obviously, in nearly all cases that original rule of decision will come from state law, the near-exclusive source for the substantive regulation of domestic relations in the understandings of our federal system. *In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the law of the United States...."). Here, by happenstance-exception, the original governing law is federally-created, by treaty and statute.

11. Just as obviously, where a debt decreed by a family court arose from a stipulation between the parties to a domestic-relations proceeding, the *parties'* intent is the relevant one.

it be classified as "in the nature of support" for ATW.[12]

■ However, the question is the *function* that the award was intended to serve, and clearly the Eighth Circuit contemplated that intent could be inferred from the nature of the real-life function of a judicially-imposed award. *See In re Kline*, 65 F.3d 749, 752 (8th Cir.1995) (M. Arnold, J., dissenting; observing that majority opinion's "liberal" interpretation of "in the nature of maintenance and support" enabled exception from discharge for "any decree that directs the husband to pay the wife money that will relieve her of an obligation that she would otherwise have," *"because it will have the effect of* freeing up resources for the maintenance and support of her and her children . . . ." (emphasis added)).

*Kline's* observation-in-dissent is accurate. It underlines the key circumstance for this analysis: the shifting of transactional costs effected by attorney's-fee awards in child custody and child support proceedings, to the benefit of a custodial parent, is based upon the inherent fact of a zero-sum game for the custodial parent. After a legal vindication in court, the custodial parent still has all of the fixed costs for the upbringing of the child or children, plus that parent's own personal maintenance; and the custodial parent has the additional burden of the attorney's fees and costs, often substantial, that were incurred just to get or keep the custody of the child or children. By that point, attor-

neys are completely justified in wanting to be paid for the hard work they did toward the custodial parent's success over opposition; and they necessarily press their demands on their client.

Then, as a matter of simple, de facto economics, "[e]very dollar spent on attorney's fees is a dollar not available for the support of [the custodial parent] and [the child]." *In re Shea*, 221 B.R. 491, 498 (Bankr.D.Minn.1998). As a result, awards of attorney's fees under state domestic relations laws—which require consideration of the parties' respective means for payment, the impact of the respective post-proceeding burdens of debt and obligation borne by both parties, the outcome, and the like—assist the custodial parent "in meeting . . . support responsibilities [to the child] by freeing up funds which would otherwise have gone for counsel fees." *Id.* When collection from the obligor on an award of attorney's fees will do that—and thus promote economic stability for the household that includes the child—it is properly inferred that the award was "in the nature of" support for the child, and hence excepted from discharge under § 523(a)(5). *Id. See also In re Williams*, 703 F.2d at 1057 (attorney's fee award held in nature of support for spouse who was unemployed and in poor health, and was given award to permit use of limited resources for personal support). *Cf. Adams v. Zentz*, 963 F.2d at 200 (where award of attorneys' fees is imposed due to conduct of spouse-party, and not on consideration

---

**12.** An abstract argument could be made, that the award was in the nature of support *for Lakeman*, as "such child's parent," § 101(14A)(B). To her credit, Lakeman did not advance that argument. The parties never submitted to matrimony, so Weed never had a legally-imposed duty to support Lakeman in any way. The Hague Convention and the ICARA clearly assume the primary governance of underlying local domestic relations

law on custody. Such local law generally includes the imposition of legally-enforceable duties of support in tandem with a custody determination. With all of the governance of long-term status subject expressly to local law, the Hague Convention and the ICARA cannot be read as independently imposing duties of support for a particular sort of relationship, in the substantive sense.

of dependent spouse's or child's interests or well-being, it cannot be considered as serving support-related function and will not be excepted from discharge).

The ICARA has a presumptive mandate for an award of expenses, including attorney's fees, which is rebuttable where "such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3). The Eighth Circuit permits an award to be reduced from the amount otherwise indicated by a movant's proof, where the non-prevailing party demonstrates "straitened financial circumstances." *Rydder v. Rydder*, 49 F.3d 369, 373–374 (8th Cir.1995). Judge Frank relied on the ICARA and *Rydder* when he reduced the award to Lakeman by ten percent. He made the reduction after observing that "the parties appear[ed] to have similar financial circumstances"; but he clearly credited Weed's argument that his poor financial circumstances made a reduction appropriate.

In the preamble to his analysis, Judge Frank noted that Weed had conceded "that attorney fees and costs [were] recoverable [against him] under ICARA." Given the concession, Judge Frank exercised judicial restraint; he did not make any specific statements to evidence his intent as to the function an award would serve. However, it is clear from the award's structure that Judge Frank fully recognized that the Hague Convention proceeding had imposed unusual debt on Lakeman.

As clearly, he gave primacy to the restorative function of the presumptive mandate. After all, had the de facto, relative parity of the parties' financial circumstances been the only consideration, it would have been defensible to leave each side liable for its own attorney's fees without shifting any of them—or at least to more sharply discount the amount awarded to Lakeman. However, the restoration of ATW's physical presence to Lakeman's household reimposed on her all the attendant, immediate financial and personal responsibility for ATW. With the presumptive mandate tilting the considerations greatly, Judge Frank obviously intended the restorative purpose of the statute to have its sway. Every dollar that Lakeman could collect from Weed for application to her attorneys' fees would be a dollar not diverted from ATW's care and maintenance.

As such, the District Court's award was in the nature of child support for ATW. Thus, § 523(a)(5) excepts the entire amount of the award from Weed's discharge in bankruptcy.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. The Plaintiff's motion for summary judgment is granted in part and denied in part.

2. The Defendant's motion for dismissal, considered as one for summary judgment, is denied in part and granted in part.

3. 11 U.S.C. § 523(a)(15) does not operate to except from discharge in bankruptcy the award of attorney's fees and expenses in favor of the Plaintiff and against the Defendant, as fixed and liquidated by an order entered on March 2, 2011, in the United States District Court for the District of Minnesota under the caption of *Lakeman v. Weed*, Civ. No. 10–4265.

4. The debt of the Defendant to the Plaintiff described in Term 3 is excepted from discharge in BKY 11–37943, by operation of 11 U.S.C. § 523(a)(5).

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERMS 3 AND 4.