OPINION OF THE COURT
Kenneth R. Fisher, J.
This is defendant Sandra E. St. Martin’s[1] post-divorce motion seeking a finding of contempt and that plaintiff be punished with a fine or incarceration. Defendant avers that, pursuant to a divorce judgment of this court dated September 18, 2009, she was awarded the marital residence. Further, a comprehensive separation and property settlement agreement made defendant responsible for paying the first mortgage and plaintiff responsible for paying the second mortgage on the marital residence. The judgment of divorce incorporated, but did not merge the agreement. Defendant brought a similar motion for contempt on these grounds and the court found plaintiff in contempt and levied a fine of $250. (See decision and order, May 8, 2012, Fisher, J.) Pursuant to the May 8, 2012, decision and order, the court found that the parties’ separation and property settlement agreement was incorporated by reference into the parties’ judgment and that, by virtue thereof, “Husband agrees to payment [sic] the second mortgage in his name,” held by Bank of *1022 America, at least on a monthly basis as it becomes due. Defendant’s affidavit on this application avers that plaintiff still has not made any payments on the second mortgage.
Plaintiff has not responded to this motion in writing, but at oral argument conceded that he has not made any payment and contends that, following his bankruptcy in May 2012, he is no longer obligated to pay the second mortgage. Plaintiff also maintains that, following last year’s decision, he duly paid the $250 fine and that that decision required him to do nothing more. In particular, he points to the language in that decision (at 3-4) in which the court found that the agreement did not unequivocally require plaintiff to “pay off” the second mortgage in a lump sum. He extrapolates from this that the court found that it was ambiguous whether plaintiff was obligated at all to make payments on the second mortgage in his name.
As explained to him at oral argument, he is in error on the latter point. The court found in that decision that the language in the agreement — “Husband agrees to payment [sic] the second mortgage in his name” — “supports the view that husband was to continue making the monthly payments on the second mortgage” (at 3). The court further found that it was “sufficiently clear and unequivocal that husband was responsible for the mortgage payments, either monthly or by complete payoff” (at 4). A finding of contempt was made from the uncontroverted fact that he had made no payments since the “catch up” payments he made shortly after entry of the judgment. As stated, plaintiff does not contest defendant’s allegation that no payments have been made since the May 2012 decision. Indeed, it appears from documents handed up in open court that the Bank of America, in a letter dated January 10, 2013 (hereby made a part hereof), gave notice of its intent to accelerate unless $9,115.17 was paid to it by February 19, 2013. Since that did not occur, the threatened foreclosure process has presumably begun.
Domestic Relations Law § 245 provides:
“Where a spouse, in an action for divorce ... or for the enforcement in this state of a judgment for divorce, separation, annulment or declaration of nullity of a void marriage rendered in another state, makes default in paying any sum of money as required by the judgment or order directing the payment thereof . . . the aggrieved spouse may make application pursuant to the provisions of section *1023 seven hundred fifty-six of the judiciary law to punish the defaulting spouse for contempt. . .
Enforcement via contempt pursuant to the Domestic Relations Law is only permitted upon a showing that less drastic enforcement measures are unavailable. (Jackson v Jackson, 7 AD3d 404 [1st Dept 2004].) Here, because the parties’ agreement provides that plaintiff is to pay third-party Bank of America on a mortgage in his name only, resort to other less drastic enforcement measures, which would only provide funds to defendant (not the third party), are unavailable to defendant to enforce the terms of the parties’ agreement.[2] Further, inasmuch as “[t]he judgment of divorce directed the parties to comply with the terms of the . . . [agreement]” “as if such terms or provisions were set forth in its entirety herein [i.e., the judgment of divorce],” a court may properly find plaintiff in contempt for failing his obligation to make payment on the second mortgage (Gordon v Gordon, 210 AD2d 929, 929-930 [4th Dept 1994]), if not discharged in bankruptcy, despite the lack of separate decretal paragraphs in the judgment itself directing that such payments be made. (Burn v Burn, 101 AD3d 488, 489 [1st Dept 2012].)
Plaintiff commenced his bankruptcy proceeding in 2011, which resulted in a discharge of all dischargeable debts under 11 USC § 727 by order dated May 3, 2012. The court had no knowledge of these proceedings on the prior application for contempt. In open court on this application, plaintiff handed up the Bankruptcy Court’s “Notice of Entry,” but he later supplied a copy of the actual discharge order. As both parties are unrepresented, the court obtained the gracious cooperation of the Western District Bankruptcy Court, which emailed the docket sheet together with the chapter 7 petition and various schedules (hereby made a part hereof). (MJD Constr. v Woodstock Lawn & Home Maintenance, 293 AD2d 516, 517 [2d Dept 2002] [“Supreme Court was entitled to take judicial notice of the record and judgment in the related bankruptcy proceeding”]; RGH Liquidating Trust v Deloitte & Touche LLP, 71 AD3d 198, 207-208 [1st Dept 2009] [same; collecting cases], revd on other grounds 17 NY3d 397 [2011].) The first and second mortgages *1024 to Bank of America were duly listed, and it was defendant who was listed as being owed “domestic support obligations” (schedule E) consisting of “child support” in the listed amount of $4,654.94. She was also listed as a “co-debtor” (schedule H), but she was not listed as a creditor with respect to plaintiffs obligation to pay the second mortgage. Accordingly, defendant presumably had knowledge of the bankruptcy proceedings and opportunity to contest the discharge of the second mortgage. However, it appears from the docket sheet that no such objection was made by her.
Accordingly, the court finds that the discharge granted to the plaintiff encompassed his personal liability to Bank of America on the second mortgage. As it stands now, the liability to Bank of America is discharged as to plaintiffs personal liability, thus leaving the bank free to pursue its in rem remedy against defendant and the property. (Johnson v Home State Bank, 501 US 78, 82-83 [1991], citing 11 USC §§ 524 [a] [1]; 522 [c] [2]; In re Dumont, 581 F3d 1104, 1108 [9th Cir 2009] [if after entry of a discharge order “the buyer stopped making payments or otherwise defaulted, then the creditor could reclaim its collateral but could not pursue a deficiency judgment against the debtor”]; Carman v European Am. Bank & Trust Co., 78 NY2d 1066, 1067 [1991]; McArdle v McGregor, 261 AD2d 591 [2d Dept 1999].)
Although the Fourth Department has opined in dicta that a mortgagor may, despite the discharge of a mortgage in bankruptcy, “reaffirm” that debt by entering into a modification agreement (Berretta v Berretta, 201 AD2d 886, 887 [4th Dept 1994]), the court cannot discern how that could be done under federal law as it now exists. Here, plaintiff took advantage of a procedure sanctioned in the Second Circuit, known as the “ride through option,” under which a debtor may retain possession of real property without being required to reaffirm or redeem under 11 USC § 521 (a) (2) (A)-(B) so long as the payments to the creditor remain current. (See In re Caraballo, 386 BR 398, 401-402, 402 n 5 [D Conn 2008]; In re Sosa, 443 BR 263, 268-269 [D RI 2011] [confirming availability of the ride through option for real property, but leaving open the question “whether debtors can force a permanent ride through on their homes without reaffirming the underlying debt”]; see also In re Suarez, 198 F3d 234 [2d Cir 1999] [table; text at 1999 WL 753381, 1999 US App LEXIS 35878 (1999)] [involving real property]; In re Boodrow, 126 F3d 43, 53 [2d Cir 1997] [bankruptcy court *1025 may allow “a debtor who is current on loan obligations to retain the collateral and keep making payments under the original loan agreement”; involving personal property].) Plaintiff listed both mortgages on part A of his “Chapter 7 Individual Debtor’s Statement of Intention,” not claiming the property as exempt and announcing his intention to “reaffirm” each debt, the first mortgage because his “ex-wife [was] to purchase/assume mortgage” and the second mortgage by reason of his intention to “negotiate with lender.” Plaintiff has admitted that he is not current with the second mortgage, and he has effectively admitted that he has not renegotiated with the lender by virtue of his open court proclamation that he is no longer liable to pay that mortgage.
Despite the Fourth Department’s reference to reaffirmation, a reaffirmation agreement at this stage is impossible because of the entry of the discharge order. (11 USC § 524 [c] [1] [reaffirmation agreement “is enforceable . . . only if. . . (1) such agreement was made before the granting of the discharge under section 727”].) Bankruptcy law requires that the debtor file a “statement of intention” as a means to effectuate speedy settlements in bankruptcy cases, but it only requires that the debtor file the statement of intention, not to execute or perform the stated intention, which was in this case to reaffirm. (11 USC § 521 [a] [2] [A]-[B].) Where the ride through option is available, as in the Second Circuit,[3] the only consequence of a failure to execute the debtor’s stated intention that this court finds in the statute applies to personal property only. (11 USC § 521 [a] [6] [automatic termination of stay for failure timely to perform or execute a stated intention].) “Congress specifically excluded real property from this new remedy.”[4] (In re Sosa, 443 BR at 268, 268-269 [“regarding the ‘ride through’ issue, several courts have held that the BAP CPA amendments to § 524(j) and § 521(a)(6), with additional changes to § 362(h), show Congress’s *1026 intent to eliminate the ride through option only as to personal property, and to permit debtors to ‘take advantage of the ride through option with respect to relevant real property’ without reaffirming the underlying debt”], quoting In re Caraballo, 386 BR at 402.) In addition, in this case there is no question of stay termination as the discharge was entered nearly a year ago on May 3, 2012, and therefore no stay currently is in place.
Nevertheless, that is not the end of the matter. Plaintiff’s obligation to pay the second mortgage was imposed as part of the equitable distribution of marital property and debt under the separation agreement which was incorporated into the divorce decree. Under prior bankruptcy law, the classification of the obligation as property division or spousal or child support was important to the determination whether the obligation was discharged under section 727. While some New York cases held that was a matter which “is for the Bankruptcy Court to determine” (Hilsen v Hilsen, 161 AD2d 459, 459 [1st Dept 1990]; see also Kovitz v Tesmetges, 186 AD2d 32 [1st Dept 1992]; Blumenfeld v Blumenfeld, 155 Misc 2d 592 [Sup Ct, Nassau County 1992]), more recent authority holds “that state and federal courts have concurrent jurisdiction over the issue of the dischargeability of a particular debt following the discharge of the debtor in bankruptcy.” (Matter of Ross v Sperow, 57 AD3d 1255, 1256 [3d Dept 2008]; see Eden v Robert A. Chapski, Ltd., 405 F3d 582, 586 [7th Cir 2005] [“there is no dispute that, with certain exceptions not relevant here, state courts have concurrent jurisdiction with the bankruptcy courts to determine whether or not a debt is dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)”]; Chevron Oil Co. v Dobie, 40 NY2d 712, 714-715 [1976]; Barax v Barax, 246 AD2d 382, 384 [3d Dept 1998].) The Ross and Barax cases involved an inquiry just as is presented in this case.
The court recognizes, of course, that if under federal law the determination is that the award of debt in this case was discharged in bankruptcy, that would be, for the state court, “the end of the inquiry.” (Blumenfeld, 155 Misc 2d at 595; see Spankowski v Spankowski, 172 Wis 2d 285, 493 NW2d 737 [1992]; Fitzgerald v Fitzgerald, 144 Vt 549, 481 A2d 1044 [1984].) These cases make it clear that the court cannot revive a discharged debt on a postjudgment application for enforcement of the discharged obligation or for the purpose of “relitigating the property distribution aspect of the divorce” without a violation of the Supremacy Clause because such would be “circum *1027 vent[ing] an adjudication of plaintiffs liability to her by the bankruptcy court.” (144 Vt at 552, 481 A2d at 1046.)
Bankruptcy law changed in respect to the domestic support obligation/property division dichotomy under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub L 109-8, 119 US Stat 23).[5] Currently, “[i]n a Chapter 7 proceeding, an equitable distribution obligation is excepted from discharge under 11 U.S.C. § 523(a)(15).” (In re St. Clair, 2011 WL 6888369, *2-3, 2011 Bankr LEXIS 5166, *6-10 [D NJ, Dec. 29, 2011, No. 08 27884 (MBK)].) Section 523 (a) provides in relevant part as follows:
“A discharge under section 727 . . .of this title does not discharge an individual debtor from any debt . . .
“(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) [domestic support obligations] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.”
Here, there is no question that the obligation imposed by the separation agreement incorporated into the divorce decree was “incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree” within the meaning of the statute. The separation agreement in this case contained a hold harmless clause applicable to the first mortgage running in favor of the husband, but lacked one in connection with the second mortgage which if inserted would have run in favor of the wife. Nor was there a general hold harmless provision included that would sweep in the obligations imposed by the real property section of the agreement. Accordingly, whether the obligation imposed by that agreement/decree to a third party, the Bank of America, is a debt “to a spouse, former spouse, or child of the debtor” within the meaning of the statute is, from a reading of the various (and varied) cases on the subject, not a settled question under bankruptcy law, but *1028 appears from the cases decided in the Second Circuit to have a definitive answer.
The case of In re Rogers (2010 WL 1571196, *5, 2010 Bankr LEXIS 1251, *17 [D Conn, Apr. 19, 2010, Bankr No. 08-30864 (LMW), Adversary No. 08-3080 (LMW)]) “reserve[d] for another day the issue of whether the requirement of a ‘hold harmless’ obligation persists under current Section 523(a)(15) and will look to cases decided under Old Section 523(a)(15) for guidance.” Looking to its prior decision in In re Pierce (323 BR 21, 29-30 [D Conn 2005] [collecting cases; decided under former section 523 (a) (15)]), the court adhered to “the view that the requisite ‘hold harmless’ agreement did not have to be express but ‘may be implied from the underlying obligation to pay third parties.’ ” (In re Rogers, 2010 WL 1571196 at *6, 2010 Bankr LEXIS 1251 at *17, quoting Pierce, 323 BR at 32.) The conflicting cases are collected in Pierce (323 BR at 29-30), and in the more recent case of In re Langman (465 BR 395, 406-408 [D NJ 2012]), which did not decide the issue under section 523 (a) (15), but in extended discussion described the view of the matter in the District of New Jersey. (Id. at 406-407 [“Judge Wolfson([6]) upheld the Bankruptcy Court’s determination of nondischargeability pursuant to § 523(a)(15), supporting the ‘substance over form’ approach and finding that even though the indebtedness was made payable to a third party, the divorce decree had created a debt, fully enforceable as a judgment of the domestic relations court, and thus the debt was incurred at the time of the divorce and nondischargeable pursuant to § 523(a)(15)”].) The court in Langman also took note of the similar view in the Second Circuit under section 523 (a) (5). (465 BR at 406 [“Before the passage of BAPCPA, courts in this Circuit and many others had already broadly interpreted § 523(a)(5) to provide an exception from discharge for certain debts to third parties, such as law firms, when the debts were incurred by the spouse, ex-spouse, or child of the debtor in furtherance of domestic support obligations, on the principle that ‘dischargeability must be determined by the substance of the liability rather than its form.’ Falk & Siemer, LLP v. Maddigan (In re Maddigan), 312 F.3d 589, 593 (2d Cir. 2002) (citing Pauley v. Spong [In re Spong], 661 F.2d 6, 9 [2d Cir. 1981]) (holding that ‘[t]he fact that the debt is payable to a third party [here, (a law firm)) does *1029 not prevent classification of that debt as being owed to Maddigan’s child’ ”]; see Matter of Ross v Sperow, 57 AD3d 1255, 1257 [1st Dept 2008] [applying Spong’s substance over form approach to a § 523 (a) (5) non-discharge case].)
Bankruptcy courts in the Second Circuit have agreed that that court would adhere to its pre-BAPCPA rulings cited immediately above. (In re Rogowski, 462 BR 435, 444 [ED NY 2011] [“This Court concludes that the Second Circuit would apply the current § 523(a)(5) in the same manner as it did (prior to BAPCPA), would attach no preclusiveness to the named payee in the divorce decree, and would require that the substance of the award should prevail, not its form”]; In re Rubenstein, 2012 WL 837339, *3, 2012 Bankr LEXIS 1059, *7 [D Conn, Mar. 9, 2012, Bankr No. 09-22124 (ASD), Adversary No. 09-2056] [“join(ing) other bankruptcy courts in this Circuit in concluding that Spong and its progeny remain just as applicable after BAPCPA as they were before it”; collecting cases].) Although these cases arise under post BAPCPA § 523 (a) (5), the same language was used in amended section 523 (a) (15), and thus no limitation or narrowing of those debts intended to be non-dischargeable can be inferred. As recognized in In re Rogowski:
“To the contrary, the BAPCPA amendments ‘accord[ ] domestic and child support claimants a broad spectrum of special protections. The legislation creates a uniform and expanded definition of domestic support obligations’ and provides DSOs with ‘the highest payment priority . ... It also broadens the categories of nondischargeable family support obligations with the result that these debts will not be extinguished at the end of the bankruptcy process.’ ” (462 BR at 444 n 16, quoting HR Rep 109-31 [I], 109th Cong, 1st Sess, reprinted in 2005 US Code Cong & Admin News at 88, 102-103 [2005 WL 832198] [emphasis supplied].)
Notwithstanding that these are section 523 (a) (5) determinations, if it is true that “BAPCPA removed the balancing test from Section 523(a) (15) and made the distinction between domestic support obligations and other obligations arising from a divorce immaterial in a dischargeability analysis” (In re Ginzl, 430 BR 702, 707 [MD Fla 2010], quoted in In re Rogowski, 462 *1030 BR at 439 n 5), then the same analysis is appropriate under section 523 (a) (15).[7]
This construction of section 523 (a) (15) is consistent with applicable New York law, which would imply an obligation to hold harmless without an express hold harmless provision. If without a bankruptcy proceeding plaintiff refused to make payments on the second mortgage and defendant undertook to make them to avoid foreclosure, the law would imply an obligation on the part of plaintiff to repay her. Under New York law, “[i]t is nothing short of simple fairness to recognize that ‘[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity’ (Restatement, Restitution, § 76).” (McDermott v City of New York, 50 NY2d 211, 217 [1980].) “To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs.” (Id.) “Thus, the rule developed that £[w]here payment by one person is compelled, which another should have made ... a contract to reimburse or indemnify is implied by law.’ ” (Id., quoting Brown v Rosenbaum, 287 NY 510, 518-519 [1942].)
Similar considerations of state law, when combined with the Arkansas counterpart to New York Domestic Relations Law § 245, have led bankruptcy courts in that state to the conclusion that the presence or absence of a hold harmless clause is of no moment if the property settlement agreement incorporated into the divorce decree effectively “orders” payment of the debt to the third party, as this one does (see discussion, above). (In re Henson, 197 BR 299, 302-303 [ED Ark 1996]; see also In re Douglas, 369 BR 462, 463 n 2 [ED Ark 2007]; In re Sturdivant, 289 BR 392, 399 [WD Ark 2003], citing In re Henson.)
Accordingly, the provision of the divorce decree incorporating the property settlement agreement’s allocation of the second mortgage debt to plaintiff, and which directed the parties to comply with the terms of the agreement as if such terms were set forth in their entirety in the divorce decree, renders that debt non-dischargeable under section 523 (a) (15), even though Bank of America could not invoke the discharge exception itself.
*1031 “The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the spouse or former spouse — an obligation to hold the spouse or former spouse harmless — which is within the scope of this section.” (140 Cong Rec H1075201, H10770 [Oct. 4, 1994], quoted in In re Poppleton, 382 BR 455, 457 [D Idaho 2008]; HR Rep 835, 103rd Cong, 2d Sess 55 [1994], reprinted in 1994 US Code Cong & Admin News at 3340, 3364.)
“[I]n the case of an obligation to pay a debt owed to a third party, it is the obligation to hold the spouse or former spouse harmless that is presumptively nondischargeable under this section. See 140 Cong. Rec. H10752, H10770. ‘A property settlement incorporated by a divorce decree that apportions third party debt to one spouse means that the obligor-spouse indemnifies the obligee-spouse in the event that the obligee is required to pay.’ In re Sturdivant, 289 B.R. at 399 (citing Johnston v. Henson (In re Henson), 197 B.R. 299, 303 (Bankr.E.D.Ark.1996)).” (In re Douglas, 369 BR at 463-464 n 2; see also In re Beggs, 314 BR 401, 416 [ED Ark 2004] [“It is only the obligation owed to the spouse or former spouse which falls within the scope of § 523(a)(15); in the case of an obligation to pay a debt owed to a third party, it is the obligation to hold the spouse or former spouse harmless that is presumptively nondischargeable under this section”].)
That leaves for consideration just what remedies are available for plaintiff’s default of his obligation to pay the second mortgage. “A finding of civil contempt requires the violation of a clear and unequivocal mandate set forth in an order or judgement of the court. Additionally, the moving party bears the burden of proof and ‘the contempt must be established by clear and convincing evidence.’ ” (Matter of Rothschild v Edwards, 63 AD3d 744, 745 [2d Dept 2009].)
“The law is clear that there need not be a willful *1032 refusal to obey a court order before a party may be adjudged in civil contempt. ‘It is not necessary that such disobedience be deliberate; rather, the mere act of disobedience, regardless of its motive, is sufficient to sustain a finding of civil contempt if such disobedience defeats, impairs, impedes or prejudices the rights of a party’.” (King v King, 124 Misc 2d 946, 949 [Sup Ct, NY County 1984], citing Great Neck Pennysaver v Central Nassau Publs., 65 AD2d 616-617 [1978]; accord Matter of McCormick v Axelrod, 59 NY2d 574, 583 [1983].)
Similar to the court finding on May 8, 2012, it is sufficiently clear and unequivocal that husband was responsible for the mortgage payments, either monthly or by complete payoff. As it is uncontroverted that he has failed to make the monthly payments since about the time of the execution of the judgment, including after this court found him in contempt (since his hold harmless liability to his former spouse has not been discharged), the court finds that there is probable cause to believe that he is in contempt.
Under Judiciary Law § 770, a fine or imprisonment may only be ordered “[i]f it is determined that the accused has committed the offense charged; and that it was calculated to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of a party to an action.” Plaintiffs failure to pay the monthly payments on the second mortgage places defendant in danger of losing the house through a foreclosure action and, as such, his actions would defeat, impair, and impede her right to possession and use of the marital residence as provided in the parties’ agreement, incorporated but not merged in the judgment. On the other hand, plaintiff has defended on the ground that he thought that the second mortgage was discharged. In the circumstances, the court cannot find on the present record and without adversary fact-finding that, pursuant to Judiciary Law § 770, plaintiffs action was calculated to, or actually did impair and impede defendant’s right to possession and use of the former marital residence.
Furthermore, pursuant to Judiciary Law § 770, upon any finding of contempt, plaintiff may be punished by fine or imprisonment, or both. This court previously imposed a fine of $250 plus costs. Accordingly, it may be appropriate that plaintiff be considered for a sentence of incarceration. However, the court must consider Judiciary Law § 770:
“Upon the return of an application to punish for *1033 contempt, or upon a hearing held upon a warrant of commitment issued pursuant to section seven hundred seventy-two or seven hundred seventy-three of this article, the court shall inform the offender that he or she has the right to the assistance of counsel, and when it appears that the offender is financially unable to obtain counsel, the court may in its discretion assign counsel to represent him or her. If it is determined that the accused has committed the offense charged; and that it was calculated to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of a party to an action or special proceeding, brought in the court, or before the judge or referee; the court, judge, or referee must make a final order directing that he or she be punished by fine or imprisonment, or both, as the nature of the case requires. A warrant of commitment must issue accordingly.”
In consideration of the above, the matter is adjourned to permit plaintiff to obtain counsel. (Wills v Wills, 283 AD2d 1023, 1024-1025 [4th Dept 2001].) The new date for appearance of counsel is: April 22, 2013 at 9:45 a.m.
In the meantime, plaintiff would do well to purge any possible finding of contempt via rescuing the property from default. Absent that, a more workable solution is for defendant to undertake herself to bring the second mortgage current or pay it off entirely if the bank will accept payment from her. Once she does so, she would be entitled to a money judgment and other remedies, or perhaps an income deduction order, on the non-discharged obligation to hold her harmless for any payments she is forced to make, under CPLR article 52.
Defendant’s motion for an order of contempt is held and decision is reserved pending further proceedings as set forth above.

. The paper work submitted had the caption reversed. The clerk is directed to correct the caption on defendant’s motion papers.

. As will be seen below, defendant may undertake to bring the second mortgage current and then be entitled to implied restitution/indemnification from plaintiff, in which case a money judgment or wage deduction order would be of assistance. But until she does so, her claim for indemnity implied by law does not accrue.

. (Compare In re Taylor, 3 F3d 1512, 1516 [11th Cir 1993] [“(i)f a debtor retains secured property, then the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm”]; In re Harris, 421 BR 597, 600 [SD Ga 2010] [“I agree the BAP CPA changes address the ride through as to personal property, not to real property. . . . Prior to BAP CPA, the legal landscape under § 521(a)(2) in the Eleventh circuit was controlled by the Taylor case which did not allow a ride through. . . . (and therefore concluding that) in a chapter 7 case, I find a debtor must reaffirm the debt if he chooses to retain the secured real property”]). The conflicting cases are canvassed in both opinions in In re Dumont (581 F3d 1104 [2009]).

. Referring to Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), see below.

. The question of discharge in plaintiff’s case remains open, because BAPCPA deleted section 523 (a) (15) debts from the list of debts included in the category of debts which are discharged automatically if the creditor failed to file an adversary proceeding in bankruptcy court to obtain a declaration that the obligation was not discharged. (Pub L 109-8, 19 US Stat 23, § 215 [2], amending 11 USC § 523 [c] [1].)

. Referring to the case of Prensky v Clair Greifer LLP (2010 WL 2674039, 2010 US Dist LEXIS 66181 [D NJ, June 30, 2010, Wolfson, J., No. 09 6200 (FLW)], affg sub nom. In re Prensky, 416 BR 406 [D NJ, 2009, Kaplan, J.]).

. For these reasons, I reject the contrary view expressed in In re Weed (479 BR 533, 538 [D Minn 2012]), which in any event was unnecessary to that decision and may have been inspired by what the judge thought were “decisions . . . not based on judicially-responsible construction of language that expressly and unambiguously created a class of protected creditor.” Whatever deference should be accorded that sentiment need not be decided, as this court chooses to follow circuit and bankruptcy court precedent applicable here.